FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 01, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES T.,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　Defendant. | No. 1:21-CV-03107-RHW<br><br>REPORT AND RECOMMENDATION |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents James T. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). This matter was referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 18. After reviewing the administrative record and the briefs filed by the parties, the Court **RECOMMENDS** Plaintiff's Motion, ECF No. 13, be granted and Defendant's Motion, ECF No. 14, be denied.

## I.    JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income on February 7, 2019, alleging disability since May 1, 2018. Tr. 15, 112, 223-28. The applications were denied initially and upon reconsideration. Tr. 144-52,

REPORT AND RECOMMENDATION . . . - 1

156-62. Administrative Law Judge (ALJ) Susan Smith held a hearing on December 4, 2020, Tr. 82-111, and issued an unfavorable decision on January 15, 2021. Tr. 12-28. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on July 13, 2021. Tr. 1-6. The ALJ's January 15, 2021 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 24, 2021. ECF No. 1.

## II. STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and the ALJ's decision and only briefly summarized here. Plaintiff was born in 1978 and was 40 years old on the date the application was filed. Tr. 23. He has a high school education, is a veteran of the U.S. Navy, and he reports he completed some college. Tr. 89. Previous employment includes customer service/retail work and part-time work as a receptionist for an organization serving disabled veterans. Tr. 90.

## III. STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.    SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

REPORT AND RECOMMENDATION . . . - 3

## V.    ADMINISTRATIVE DECISION

On January 15, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-28.

At *step one*, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17.

At *step two*, the ALJ determined Plaintiff had the following severe impairments: personality disorder and mood and anxiety disorders (variously reported as depressive or bipolar disorders and/or PTSD). *Id*.

At *step three*, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform medium work, with the following nonexertional limitations:

> [Plaintiff] can have occasional superficial contact with the public incidental to the work being performed; can have occasional contact with coworkers and supervisors; and cannot perform team or tandem work.

Tr. 19.

At *step four*, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 22.

At *step five*, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of salvage laborer, floor waxer, and industrial sweeper/cleaner. Tr. 23.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the date the application was filed through the date of the decision. Tr. 24.

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability benefits under Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ failed to develop the record concerning Plaintiff's heart condition; (2) whether the ALJ conducted a proper step-two analysis; (3) whether the ALJ properly evaluated the medical opinion evidence; and (4) whether the ALJ properly evaluated Plaintiff's symptom complaints. ECF No. 13 at 2.

## VII. DISCUSSION

**A.  Failure to Develop the Record.**

Plaintiff contends the ALJ erred by failing to fully develop the record to account for Plaintiff's heart condition. ECF No. 13 at 19-21. The ALJ has an independent duty to develop the record fully and fairly in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1995). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (citing *Tonapetyan*, 242 F.3d at 1150).

Plaintiff contends the ALJ failed to fully develop the record as to Plaintiff's heart condition, because no medical source assessed his functioning with this disorder and there is evidence of listing level findings during the period at issue. ECF No. 13 at 20-21. Defendant contends the evidence in this case was neither insufficient or inconsistent, it did not show Plaintiff was more limited than the ALJ found, and Plaintiff's unsupported conjecture does not warrant remand for further development of the record. ECF No. 14 at 3-4. The Court finds Plaintiff's hospitalization in 2020 with treatment for a new cardiovascular diagnosis, congestive heart failure, constituted a significant change in Plaintiff's physical functioning that created ambiguity over his functional capacity that should have prompted the ALJ to seek further information in the form of medical expert testimony or a consultative examination.

Plaintiff went to the emergency room in October 2020 for evaluation of increasing chest pain. Tr. 616, 624. He reported onset of symptoms several months prior, including shortness of breath, sweating, nausea, and intermittent episodes of sudden chest pressure; he was admitted later that day for observation with suspicion of hypertensive congestive heart failure exacerbation. Tr. 616, 624. He reported progressive shortness of breath along with swelling in his feet during the month prior. Tr. 619, 670. The admitting doctor noted Plaintiff's history of hypertension for over a decade, his discontinuation of one of his blood pressure medications of few months earlier, along with Plaintiff's report that his ability to tolerate physical activity had progressively decreased. *Id*. Plaintiff was diagnosed at that time with acute hypoxemic respiratory failure due to congestive heart failure (CHF) exacerbation; he remained hospitalized for seven days until his condition stabilized. Tr. 620, 623.

An echocardiogram during hospitalization showed mild to moderate left ventricular enlargement, severely impaired left ventricular systolic function,

REPORT AND RECOMMENDATION . . . - 6

ejection fraction of 25-30 percent, grade 1 diastolic dysfunction, global hypokinesis, and moderate mitral regurgitation. Tr. 623-24, 667-68. Based on the echocardiogram findings, he underwent cardiac catherization, which showed dilated congestive cardiomyopathy but no significant obstructive coronary artery disease, severe global left ventricular dysfunction, estimated ejection fraction 20-25 percent, and elevated left ventricular end-diastolic pressure. Tr. 624, 67-75. He stabilized with hospitalization, and upon discharge he was instructed to follow up with cardiology within a week; and recommendations for care included aggressive risk factor modification with medication, congestive heart failure treatment regimen, "serial echo[cardiograms], consideration of implantable cardioverter-defibrillator, along with any further recommendations pending clinical course and per care providers." Tr. 630, 675.

      Cardiology records show follow up in October and December 2020 for new onset heart failure with reduced ejection fraction and cardiomyopathy. Tr. 679-82. At the October 22, 2020 visit, his cardiologist explained he would have a repeat echocardiogram "in approximately 3 months to reassess LVEF [left ventricular ejection fraction]. If EF less than 35% then we would consider ICD [implantable cardioverter-defibrillator]." Tr. 682. At the December 2020 visit, he was also placed on a 7-day Holter Monitor due to palpitations and instructed to follow up in a month. Tr. 676-78.

      Neither the ALJ nor Plaintiff's representative discussed Plaintiff's recent hospitalization at the December 2020 hearing. Tr. 83-111. The ALJ's decision shows she had received updated records, however, and was aware of his hospitalization as of the January 2021 decision, as she referenced a "very recent cardiac event," and cited generally to records from his hospitalization and follow up. Tr. 18. The ALJ failed to discuss new/worsened cardiovascular impairment(s), however, and noted only that "exhibits 12F and 14F [from his

REPORT AND RECOMMENDATION . . . - 7

hospitalization and follow up care] indicate hypertension and uncontrolled diabetes," and concluded it was "unclear if this was secondary to an episode of acute pneumonia or otherwise occurs too recently to demonstrate duration." *Id*. This is insufficient, as the records the ALJ cited show an episode of acute exacerbation of heart failure or new onset heart failure in October 2020; and the echocardiogram two months prior to the hearing showed listing level findings, including left ventricular end diastolic diameter (LVEDD) of 6.3 cm and ejection fraction (LVEF) of 29%. Tr. 667-68. His cardiologist indicated a repeat echocardiogram around January 2021 would assist in determining the severity of his condition, including whether he would require an implantable defibrillator or other treatment. *See* Tr. 682.

Despite reviewing and citing to these records, the ALJ concluded he was not disabled in the January 15, 2021 decision without further development of the record. Tr. 15-24. The Court finds the medical evidence in this case is ambiguous or insufficient/inadequate to allow for proper evaluation of the evidence as to the severity of Plaintiff's condition after his hospitalization and treatment for new cardiovascular impairment in late 2020, and the ALJ failed to consider relevant evidence as to his cardiovascular impairments. Accordingly, the record was inadequate as to the extent of Plaintiffs cardiovascular issues. The ALJ therefore had a duty to develop the record to determine the severity of his condition and functional capacity.

Upon remand, the ALJ is instructed to update the record, including all specialist/cardiology records, and also to order a consultative examination, if indicated. The ALJ is to reevaluate the medical evidence of record with the assistance of medical expert testimony.

B. **Step Two.**

Plaintiff argues the ALJ failed to conduct an adequate analysis at step two, by failing to find Plaintiff's congestive heart failure a severe medically determinable impairment. ECF No. 13 at 4-6.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. *Id*.

Plaintiff contends the ALJ failed to consider Plaintiff's congestive heart failure. ECF No. 13 at 4-6. As discussed *supra*, the case is being remanded for the ALJ to develop the record in terms of Plaintiff's cardiovascular impairments, including congestive heart failure, and to reconsider all medical evidence. Accordingly, the ALJ is also instructed to perform the sequential analysis anew, including reconsidering the step-two analysis, with the assistance of medical expert testimony.

C. **Medical Opinion Evidence.**

Plaintiff contends the ALJ erred in the analysis of the medical opinions of Patrick Metoyer, Ph.D.; Thomas Genthe, Ph.D.; D. Morgan. Ph.D.; and Gregory Hires, LICSW. ECF No. 13 at 13-19.

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The Ninth Circuit has addressed the issue of whether the revised regulatory framework displaced longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the 2017

regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

    1.    <u>**Dr. Metoyer.**</u>

On July 26, 2019, Dr. Metoyer conducted a mental evaluation and rendered an opinion on Plaintiff's level of functioning. Tr. 411-15. Dr. Metoyer diagnosed Plaintiff with generalized anxiety disorder, PTSD, and major depressive disorder, recurrent and moderate. Tr. 415. He opined Plaintiff's ability to interact with coworkers and the public, and his ability to complete normal workaday or workweek without interruption from anxiety, PTSD, and mood symptoms, was likely moderately impaired; and that Plaintiff's ability to deal with the usual stress encountered in the workplace was markedly impaired as it involved persistent activity, complex task pressure, and interacting with other individuals. *Id*. Dr. Metoyer opined Plaintiff "appear[ed] to require the assistance of a payee at this time" if he were to receive benefits, and that he appeared to have "potential physical limitations" that would be better assessed by a medical provider. *Id*.

The ALJ discounted Dr. Metoyer's opinion because it was inconsistent with Veteran's Affairs (VA) records. Tr. 21. The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. § 416.920c(c)(2). The ALJ must consider all the relevant evidence in the record,

however, and may not point to only those portions of the records that bolster her findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, the ALJ concluded Dr. Metoyer "appeared not to have a fully accurate picture of the symptoms, as a number of the problems reported to him were not reported at the VA visits through the period through October 2019" and "there is no mention of the PTSD, psychosis, explosive anger, or other symptoms reported to Dr. Metoyer" in VA records. Tr. 21. VA records through 2019, however, show a history of suicide attempts with recent suicidal ideation, recent conflict with a neighbor, history of physical fighting with a family member resulting in arrest, and other legal issues. *See e.g.*, Tr. 349, 379, 449-451, 454-56. While the ALJ concluded VA records "seems to suggest Plaintiff's primary psychiatric condition is a personality disorder . . . and it did not prevent [Plaintiff] from working some years in a customer service related occupation," Tr. 21, VA records from that time show Plaintiff reported he lost a job he liked at a store due to a conflict with a customer and that he "has a long history of not being able to keep a job." Tr. 456.

Further, the ALJ failed to discuss a psychiatric consultation in VA records from 2020, where the psychiatrist noted Plaintiff's history of childhood trauma and abuse, recent rage issues, and Plaintiff's report of extreme highs and lows in mood. Tr. 562-63. The psychiatrist diagnosed him with PTSD, anxiety, personality disorder, and noted he also "appear[ed] to have [a] bipolar disorder," suffered occasional panic attacks, and needed to be evaluated for sleep apnea. Tr. 567-68. In citing only evidence that tended to support her conclusions, when the record showed more mixed findings, the ALJ's conclusion that Dr. Metoyer's opinion was less persuasive because it was inconsistent with VA records is not supported by substantial evidence.

As the case is remanded for further development of the record, and due to the errors above in relation to Dr. Metoyer's opinion, the Court declines to further address the medical opinion evidence. It is noted, however, that the ALJ failed to address the supportability or consistency of the state agency consultants/prior administrative findings, for example, even though the reviewing doctors opined Plaintiff had limitations that appear significantly more restrictive than the ALJ's RFC; the state agency opinions are only briefly mentioned by the ALJ. Tr. 22. Accordingly, the ALJ is instructed to reassess all medical opinion evidence during the period at issue, being mindful to utilizes the factors required by the regulations, and to either include the limitations in the RFC or provide reasons supported by substantial evidence to discount each opinion.

D.    **Symptom Claims.**

Plaintiff contends the ALJ also erred by improperly assessing Plaintiff's testimony. ECF No. 13 at 6-13.

Having determined a remand is necessary to further develop the record, perform the sequential analysis anew, and to reconsider the medical opinion evidence, the Court declines to address this issue. Upon remand, the ALJ is also instructed to carefully reevaluate Plaintiff's symptom claims in the context of the entire record.

VIII.    CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. The Court finds further proceedings are necessary to resolve conflicts in the record, as well as to further develop the record.

On remand, the ALJ is to fully develop the record in regard to Plaintiff's cardiovascular impairment(s) with the assistance of medical expert testimony, including ordering a consultative examination if necessary. The ALJ will obtain

all updated medical records, physical and mental health, and reevaluate all medical evidence of record. The ALJ is instructed to perform the sequential analysis anew, making new findings on each of the five steps of the sequential evaluation process, to reassess all medical opinion evidence using the factors required by the regulations, and to reassess plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS HEREBY RECOMMENDED** Plaintiff's Motion for Summary Judgment, **ECF No. 13**, be **GRANTED**; Defendant's Motion for Summary Judgment, **ECF No. 14**, be **DENIED**; and the District Court Executive enter **Judgment for Plaintiff REVERSING and REMANDING** the matter for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## IX.    OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within fourteen (14) days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider

additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to counsel.

DATED September 1, 2023.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION . . . - 15